In re RAY ANTHONY
INTERNATIONAL,
LLC, Debtor.

Ray Anthony International, LLC,
and B & G Crane Service,
LLC, Movants

v.

No Respondent.

No. 10–26576–TPA.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 16, 2011.

Elsie R. Lampl, John P. Lacher, Robert O. Lampl, Pittsburgh, PA, for Debtor.

### MEMORANDUM ORDER

THOMAS P. AGRESTI, Chief Judge.

The Debtor and B & G Crane Service, LLC ("B & G") have filed an *Emergency Joint Motion to Clarify Sale Order* at Document No. 902, which in content, is actually a motion for reconsideration ("Emergency Motion"). The *Emergency Motion* contends that the Sale Order (Document No. 899) authorizing a sale of the Debtor's assets to B & G needs to be "clarified" because it purportedly fails to accurately set forth the intended pool of parties whose liens, claims and interests in the assets would be divested by the sale. For the reasons that follow the *Emergency Motion* will be denied, but first, the Court finds it to be expedient to provide some brief background.

The proposed sale to B & G was first brought before the Court on April 14, 2011, when the Debtor filed a *Motion for Sale of Personalty Free and Clear of All Liens, Claims and Encumbrances,* Document No. 714. That motion named 44 Respondents and merely alleged, without any further detail, that they "may" hold liens, claims, and encumbrances against the personal property assets which were to be sold. This sort of "throw it all against the wall" approach did not conform to the pleading requirements of the *Local Rules* of this Court and therefore was not acceptable. As a result, on April 15, 2011, the Court *sua sponte* ordered the motion to be denied without prejudice. In relevant part, the Court's Order stated:

> The body of the *Motion* lists the Respondents, but does not provide any addresses for them or a brief description of the lien, claim or encumbrance which Debtor believes they may have in connection with the property Debtor is seeking to sell. The Court is of the view that fundamental due process requires that a motion such as this should include at least that minimal level of information, or an explanation why it is not available, before property interests are affected.

Document No. 720.

On April 26, 2011, the Debtor filed a *Renewed Motion for Sale of Personalty Free and Clear of All Liens, Claims and Encumbrances,* Document No. 743. This renewed motion actually increased the number of respondents to 59. It did, however, include as an attached exhibit a list of the property proposed to be sold along with an identified lien holder for each item of personalty. Although this was a small improvement over the original motion, only 11 lien holders were shown on the exhibit, versus the 59 named respondents. As a result, and in an effort to avoid further delay in the process by simply again denying the renewed motion, the Court directed a member of its Chambers' staff to contact Counsel for the Debtor and report that the Court continued to harbor significant due process concerns, similar to those previously expressed in the April 15, 2011 Order dismissing the prior motion. Coun-

sel for the Debtor indicated that an amended motion would be filed to address those concerns.

On May 5, 2011, the Debtor filed an *Amended Motion for Sale of Personalty Free and Clear of All Liens, Claims and Encumbrances,* Document No. 763. This amended motion reduced the number of respondents to 20, the majority of whom were identified in exhibits as having liens on specific pieces of equipment to be sold. On May 10, 2011, the Court convened a hearing related to the proposed sale to B & G, specifically concerning the bidding procedures to be employed in connection with the sale but also touching upon the sale itself. Just in case there was any doubt remaining about the Court's view as to which liens would be divested by such sale, the Court advised Counsel for the Debtor, right "up front" at the hearing, as follows:

> Court: Number 1, I told you this before, "free and clear of all liens, encumbrances" only goes as to the named Respondents who have their liens identified; nobody else.
>
> Mr. Lampl: We understand that.
>
> Court: Alright, great. Let's get some ground rules together.
>
> Mr. Lampl: We understand.

*Audio file of May 10, 2011 hearing at 3:03:50 to 3:04:05.* Counsel for B & G was present at this hearing and had an opportunity to raise questions about the Court's position in this regard, but failed to do so, instead addressing only issues as to a potential breakup fee, credit bidding, and some objections filed by creditors.

A hearing on the amended sale motion was then held on June 9, 2011. Counsel for the Debtor reported that all objections of creditors had been resolved and the sale could go forward. Counsel for B & G was then recognized. The only issue he raised was that the Debtor had not been able to locate titles for certain of the items of equipment to be included in the sale. Counsel reported that all had agreed to a provision in the sale order that would put the allocated funds for those items of equipment into an escrow and give the Debtor 30 days time to try to locate the titles, something the Court readily approved. *Audio file of June 9, 2011 hearing at 4:06:45 to 4:10:00.* Nothing was said about the Court's clearly-stated position that only named, identified respondents would have their liens divested by the sale. At this point, the Court had no reason to believe an issue of any kind in that regard remained in dispute. No other bidder stepped forward and the Court verbally approved the sale to B & G, directing the parties to submit a proposed order consistent with the record discussions as approved by the Court.

With this background in mind, the Court will frankly state that it was surprised when the Parties the next day submitted a proposed order (Document No. 886) and by doing so implicitly claimed the Court gave them *carte blanche* authority to submit a proposed order that directly conflicted with the Court's stated position so long as the Parties agreed to its content. More specifically, the proposed order attempted to vastly broaden the scope of relief which would be granted by including language directed to the divestment of "all liabilities and obligations of the Debtor, including without limitation, all multi-employer pension plan withdrawal liability." The Court views the insertion of this language as an attempt to "sneak one by" and hide "in the minutiae" of the proposed order language previously, and repeatedly, indicated by the Court as unacceptable.[1]

---

1. In fact, as far as the Court is aware, no-

where in any previous pleadings was there

But for the fact that the Parties had expressed a strong intention to close the sale on the afternoon of June 13th, putting time at an extreme premium, the Court would have summarily dismissed the proposed order and required a new conforming, proposed order to be filed. Instead, in an effort to keep the sale on track, the Court modified the proposed order through use of "white out" and handwritten changes to correctly reflect the relief being granted. In so doing, the Court kept the modification to a bare minimum.

Set forth below is a "redline" version of the pertinent language from the proposed order, showing the changes made by the Court, striking the proposed language as shown and adding the highlighted language:

> Now, therefore, IT IS ORDERED, ADJUDGED AND DECREED that the sale of the Assets to the purchaser in accordance with the terms of the APA is hereby CONFIRMED, free and divested of ~~(I) the above recited liens and claims; and (ii) all Liens, Claims and Interests, including but not limited to, all liabilities and obligations of the debtor, including without limitation, all multi-employer pension plan withdrawal liability~~ the liens, claims and interests referenced in the attached exhibit A. . . . . . .

Document No. 899. This modification was intended to conform the order to the Court's previously-stated position that the sale would be free and clear of liens, etc. only with respect to those of named respondents and identified liens, claims

even a reference to divestiture of "multi-employer pension plan withdrawal liability." Divestiture of this alleged liability was a totally gratuitous "add-on" by the creator(s) of the proposed document.

2. The Court does not find any conflict between the paragraph it modified in the proposed order and the following paragraph

and/or encumbrances. To the extent Exhibit A to the Order does not list all named respondents, the Court was cognizant that elsewhere in the proposed order (in fact in the very next paragraph) it was provided that the liens of the lien holders identified in "Paragraph 6 of the Motion for Sale" are transferred to the proceeds of sale.[2] Paragraph 6 is the listing of named respondents, so the Court finds that the Order it entered at Document No. 899 accurately reflects the relief which it intended to provide, as the Debtor and B & G have long been aware and to which no previous objection was raised. The Court does not intend to extend the lien divestment originally contemplated by it to any other entities and will not do so, whether under the guise of a "clarification" or otherwise.

For as long as the Undersigned has been on the Bench, and previously practiced before it, the rules and requirements for pleading a proper sale motion have been the same. The requirements of, and consideration for, providing adequate due process to those lien holders directly affected by a sale, has remained constant and paramount. As stated by the Honorable Bernard Markovitz of this Court nearly twenty years ago with respect to this very issue:

> Estate property may be sold other than in the ordinary course of business after "notice and hearing." 11 U.S.C. § 363(b)(1). Local Rule 9013.2(b)(1)(d) requires a motion to sell property free and clear of all liens to plead "with

which was left unmodified. The Court would further note that the vast bulk of the language in these two paragraphs remains the language as submitted by the Parties, and the Court does not believe the change it made had any effect on a potential conflict between the paragraphs.

particularity" the identity and address of the holder of each and every lien on the property to be sold. Local Rule 6004.1(A)(5) requires that the seller serve a copy of the motion upon all parties against whom relief is sought and upon their counsel.

*In re Marcus Hook Development Park, Inc.*, 143 B.R. 648, 659 (Bankr.W.D.Pa. 1992)[3]

Moreover, the proposed, recommended *Form Order* for "Sale of Assets" listed on this Court's website is not of recent vintage, nor even created by the Undersigned. Rather, it was developed and originally published, in substantially the same form, over 25 years ago by the Hon. Warren W. Bentz, previously of this Court until his recent retirement in 2009. This recommended form is currently listed on the Undersigned's website and merely approved and adopted by the Undersigned as a model for use by counsel because, if properly conformed to the specific case at hand, it complies with the *Local Rules* and clearly protects and addresses the due process concerns applicable in every sale motion proceeding, including those arising in the present case. Had the Movants considered its application in substance, from the outset, rather than giving it mere "lip service," the problems they now claim relief from would not exist.

*AND NOW,* this *16th* day of *June, 2011,* for the reasons stated above, it is *ORDERED, ADJUDGED and DECREED* that the *Emergency Motion* is *DENIED.*

---

3. The numbering of the *Local Rules* has since changed, but the same provisions cited by Judge Markovitz still exist. *See L.R. 9013–* 3(b)(1)(d) and *(e); General Court Procedure # 3.*